# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CARMELA SPERA-VANTILBURG,** | }<br>} |
| **Plaintiff,** | }<br>} |
| v. | } Case No.: 2:15-cv-1236-JHH<br>} |
| **CAROLYN W. COLVIN, Acting**<br>**Commissioner of Social Security,** | }<br>}<br>} |
| **Defendant.** | } |

# MEMORANDUM OPINION

Plaintiff, Carmela Spera-Vantilburg, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Proceedings Below**

Plaintiff filed her application for DIB protectively on September 5, 2012, alleging a disability onset date of February 26, 2014. (R. 11, 127-28). Plaintiff's application was denied initially on January 18, 2013, (R. 64-77), and thereafter,

Plaintiff timely filed a request for a hearing. (R.84). Plaintiff's request was granted, and a video hearing was held before an Administrative Law Judge ("ALJ") on February 10, 2014, with Plaintiff appearing in Birmingham, Alabama, and the ALJ presiding over the video hearing from St. Louis, Missouri. (R. 32-63). Plaintiff and Vocational Expert ("VE") Julia A. Russell provided testimony at the hearing. (R. 32-63). Plaintiff was represented by an attorney at the video hearing. (R. 32-63).

In the February 26, 2014 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability," as defined by the Act, from August 4, 2011, through the date of the decision. (R. 21). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 6-7). After the Appeals Council denied Plaintiff's request for review on May 22, 2015, (R. 1-4), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the ALJ decision, Plaintiff was forty-six (46) years old, (R. 8, 36), with a ninth-grade education and a certificate in childhood development assessment from a community college. (R. 179). She had past relevant work as a photocopy operator, cashier, receptionist, clerical worker, customer service manager, retail salesperson, and preschool teacher. (R. 52-59, 197-204). Plaintiff claims that since her alleged onset date of August 4, 2011, she has been unable to work due to

asthma, back and neck injury, arthritis, depression, high blood pressure, high cholesterol, obesity, carpal tunnel syndrome, hormone imbalance and swollen feet. (R. 13, 66, 127, 178).

At the February 2014 hearing, Plaintiff testified that she lives in a single level house with her husband. (R. 14). She testified that she cooks dinner occasionally and tries to do the dishes. (R. 14). She is able to drive and drove herself for one hour to the hearing. (R. 14). As far as her daily activities, Plaintiff testified that she is limited due to her physical impairments, but that her depression does not interfere with her day to day activities. (R. 14).

In her function report, Plaintiff stated that she prepares meals 4 days a week and that each meal takes her about an hour and a half. (R. 207). She stated that she makes things like sandwiches, hot dogs, hamburgers and french fries. (R. 207). She stated that her physical impairments make her take her time, and it is a strain to lift pots and pans and open cans, jars and bottles. (R. 207). Plaintiff stated that she does not cook like she used to because of her hands (carpal tunnel) and her back. (R. 209). Plaintiff is able to shop for clothes and groceries, but it can take one to two hours because she has to rest because her back hurts. (R. 208).

As far as housework, Plaintiff stated in her function report that she sweeps and does small loads of laundry. (R. 207). She also cleans the bathroom and dusts. (R.

207). Her stepdaughter helps her with chores that she cannot do on her own. (R. 207). She cleans the house about once a week and it takes Plaintiff four hours. (R. 207). Although Plaintiff stated that she sits outside every day, she does not do yard work because it is too hard on her back. (R. 208).

The record also contains evidence regarding Plaintiff's social interactions with others. She spends time with her family and friends by talking on the phone, visiting once a week and going on the computer once every few days. (R. 209). She goes to church about once a month and to her friend's house about once a week. (R. 209). She is able to go on her own to these places. (R. 209).

## II.   ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment.

Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

In her February 26, 2014 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on August 4, 2011. (R. 13 at Finding No. 1). She also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which she deemed

5

to be "severe": asthma; carpal tunnel syndrome bilateral hands; multilevel degenerative disc disease and degenerative joint disease of the lumbar and cervical spine. (R. 13-15 at Finding No. 3). Nevertheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 15-16 at Finding No. 4). According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 16-19 at Finding 5).

Thus, the ALJ found that Plaintiff retained the physical residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except as follows: she could frequently balance; occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; she could never climb ladders, ropes or scaffolds; she had to avoid unprotected heights, vibrations, and concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, and poor ventilation; and she was able to frequently handle and finger bilaterally. (R. 16 at Finding 5).

The ALJ sought testimony from VE Julia A. Russell at the administrative hearing, and she posed several hypothetical questions to Russell regarding different scenarios of functional capacity. (R. 58-62). With Russell's help, the ALJ

determined that Plaintiff is able to perform her past relevant work, (R. 19 at Finding No. 6), and in the alternative she concluded that Plaintiff could perform other "light work" occupations which exist in significant numbers in the national economy, including occupations such as a routing clerk (Dictionary of Occupational Titles 7 ("DOT") § 222.687-022), of which approximately 12,300 such jobs exist in Alabama and 330,000 nationwide, sorter, (DOT § 569.687-022), of which 2,800 such jobs exist in Alabama and 164,000 nationwide, and machine tender (DOT § 556.685-062) of which approximately 65,000 nationwide. (R. 21 at Finding No. 6). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time from August 4, 2011, through the date of the decision. (R. 21 at Finding No. 7).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 14). Plaintiff's arguments focus on the ALJ's RFC finding, which she contends was not supported by substantial evidence and/or was derived by the application of improper legal standards. Specifically, Plaintiff contends that the RFC finding: (1) improperly discredits her subjective complaints under the Eleventh Circuit "pain standard;" (Doc.

# 14 at 5-9) and (2) failed to properly articulate good cause for according less weight to the opinion of her treating physician. (Doc. # 14 at 9-12).

**IV.   Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the

Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal. As noted earlier, Plaintiff's arguments centers on the ALJ's RFC calculation (through the application of the pain standard and consideration of Plaintiff's treating physician), which the court finds to be supported by substantial evidence and the application of proper legal standards. The court has carefully considered each of Plaintiff's argument, the analysis of which follows.

### A.     The ALJ Properly Discredited Plaintiff's Pain Complaints Pursuant to the Pain Standard

Plaintiff first challenges the ALJ's assessment of her subjective complaints because she contends the ALJ "relie[d] upon isolated notations in the record to support her findings and failed to properly consider the medical evidence as a whole which supports a finding of disability." (Doc. # 14 at 6.) Specifically the Plaintiff points to the following evidence as supporting her subjective complaints of pain: (1) an April 19, 2004 MRI of the cervical spine that showed degenerative changes; (2)

9

September 12, 2012 MRIs of her cervical and lumbar spines which show multilevel degenerative disc disease and degenerative joint disease; (3) treatment notes from her orthopedist; and (4) a consultative examination th Dr. Frederick Ernst.  (Doc. #14 at 6-9).

It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.  *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in her analysis and that she considered Plaintiff's symptoms

11

and subjective complaints in light of the steps outlined above. The ALJ reached her conclusions after a thorough review of the opinions of Plaintiff's treating and examining sources, which support her ultimate determination. *See* C.F.R. § 404.1529(c)(2).

Although the ALJ determined that the objective evidence establishes medically determinable impairments that could produce Plaintiff's alleged symptoms, (R. 17), she nevertheless found that Plaintiff's statements about the intensity, persistence and limiting effects of those impairments are not entirely credible. (R. 17). Plaintiff disagrees and argues that the ALJ "picked and chose" among medical treatment notes to support her conclusion and ignored various evidence that Plaintiff contends support her allegations. (Doc. # 14 at 6-9). She points to the following evidence as supporting her subjective complaints of pain: (a) 2004 MRI of the cervical spine that showed degenerative changes (R. 267); (2) September 2012 MRIs of the cervical and lumbar spines, also showing multilevel degenerative disc disease and degenerative joint disease (R. 366-68); (3) treatment notes from Dr. Srinivas Mallempati, her orthopedist, who described the results of the MRI as showing multilevel disc disease and degenerative joint disease and who documented tenderness and a limitation of flexion in the cervical and lumbar spine (R. 363); and (4) a consultative examination by Dr. Frederick Ernst on January 10, 2013). (R. 387-91). (Doc. # 14 at 6-9).

As to the 2004 and 2012 MRIs, the ALJ did not ignore them as insinuated by Plaintiff. Rather, she addressed them in detail (R. 17) and concluded that while the objective imaging results showed degenerative disc disease of the cervical and lumbar spine and degenerative joint disease, they failed to support the degree of limitation alleged by Plaintiff. (R. 17). Similarly, Plaintiff considered the treatment notes from Dr. Mallempati, (R. 387-91), and based in part on those notes, the ALJ assessed multilevel degenerative disc disease and degenerative joint disease as severe impairments. That being said, however, the ALJ concluded, based on her thorough analysis of Dr. Mallempati's records (R. 17), that those treatment notes failed to support the degree of limitation alleged by Plaintiff. (R. 16-17). Finally, the ALJ expressly considered the consultative examination by Dr. Ernst. (R. 18, 387-391). Again, the ALJ concluded that despite some positive findings, Dr. Ernst's report failed to support the disabling level of musculoskeletal limitations alleged by Plaintiff. (R. 18, 387-391). Plaintiff's arguments ultimately amounts to nothing more than a disagreement with the ALJ's credibility finding and does not point to any true error in the ALJ's consideration of the evidence in assessing Plaintiff's credibility.

In conclusion, the court finds that the ALJ did not err in discrediting Plaintiff's subjective complaints. Given the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling limitations were not

entirely credible. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a); Ellison, 355 F.3d at 1276.

### B. The ALJ Properly Considered the Doctors's Opinions in Assessing Plaintiff's RFC.

According to Plaintiff, "[t]he Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according less weight to the opinion of Plaintiff's treating physician when finding that the Plaintiff was not disabled." (Doc. # 14 at 9). To the contrary, the court finds that the ALJ applied proper legal standards when weighting the opinions of Plaintiff's doctors, and her conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R.§ 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following

14

circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

Here, Plaintiff's treating physician, Dr. Zaremba, completed a "Physician's Assessment of Pain on August 23, 2013. (R. 398). In it, he checked the box indicating his opinion that Plaintiff suffers from "severe" pain that "would preclude the activity precipitating the pain." (R. 398). He further checked the box for "muscle spasm" and "x-ray" as "objective signs of pain." (R. 398). He indicated that Plaintiff would "frequently" need rest periods throughout "the day to walk about or lie down to relive [sic] pain." (R. 398). Finally, he stated that, in his opinion, Plaintiff would have to miss three or more days of work per month as a result of her condition. (R. 398).

The ALJ gave "little weight" to the opinion of Dr. Zaremba when finding the Plaintiff capable of a reduced range of light work. (R. 19). Specifically, the ALJ determined that Dr. Zaremba's opinion was "inconsistent with the objective medical evidence including his own treatment notes." (R. 19). Further, although the ALJ acknowledged that Plaintiff complained of pain to Dr. Zaremba, she concluded that his "physical findings and objective imagine results do not support the opinion that the claimant would need to miss 3 days of work per month. (R. 19). Plaintiff contends that the ALJ's findings are not supported by substantial evidence. (Doc. #14 at 10-12). The court disagrees.

A review of the evidence in the record, including that highlighted by Plaintiff in her brief, does not support the opinion of Dr. Zaremba in his August 23, 2103 assessment. Dr. Zaremba's treatment notes do not contain any abnormal physical findings that would support his opinion. (R. 19, 328, 332, 335, 337-40, 345-47, 349, 356-57, 396-97). Instead, the evidence relied upon by Plaintiff merely documents her own subjective complaints of pain to Dr. Zaremba. (R. 310, 346, 397). Such evidence is not a proper basis for a medical opinion.[1] Crawford, 363 F.3d at 1159-60;

---

[1] As to the nerve conduction study documenting "mild to moderate" carpal tunnel syndrome, the ALJ considered this, found carpal tunnel syndrome to be a severe impairment, and imposed limitations based on it. (R. 13, 16, 18-19). The ALJ noted that there was no evidence of widespread polyneuropathy and that Dr. Ernst noted normal gross and fine motor skills and a normal neurological examination. (R. 18). It is not clear whether Dr. Zaremba relied on carpal tunnel syndrome in giving his opinion of debilitating pain. (TR. 398).

Lacina v. Comm'r, Soc. Sec. Admin., 606 F. App'x 520, 528 (11th Cir. 2015); Markuske v. Comm'r of Soc. Sec., 572 F. App'x 762, 766-67 (11th Cir. 2014).

Additionally, the objective imaging results do not support Dr. Zaremba's opinion.  Those results revealed generally mild or moderate abnormalities.  (R. 17, 19, 267, 366-68).  Further, the 2004 MRI as well as treatment notes from 2004 that Plaintiff relies upon (Doc. #14 at 10-11) are stale and irrelevant because they predate her alleged onset date by seven years.  Plaintiff was able to work for years afterwards.  (R. 38, 44).

Finally,  records from Dr. Mallempati (R. 362-68) do not support Dr. Zaremba's opinion of debilitating pain, as alleged by Plaintiff.  (Doc. #14 at 11-12).  Again, she cites her own subjective complaints and reports of the medications she took, which are not a proper basis for an opinion.  See 20 C.F.R. § 404.1527(c); Crawford, 363 F.3d at 1159-60; Lacina, 606 F. App'x at 528; Markuske, 572 F. App'x at 766-67.  As to Dr. Mallempati's notes documenting some positive findings, as well as the 2012 MRIs, as explained by the ALJ, these MRIs and Dr. Mallempati's notes simply did not support a conclusion that Plaintiff had limitations beyond those the ALJ assessed in the RFC. (R. 17).

In sum, Plaintiff failed to show that the ALJ improperly considered the opinions of Dr. Zaremba. Substantial evidence supports the ALJ's evaluation of the medical source opinions and her assessment of Plaintiff's RFC.

## VI. Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___12th___ day of May, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE